# AFFIDAVIT OF SPECIAL AGENT CHRISTOPHER BARBADORO

I, Christopher Barbadoro, being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I am a Special Agent with the Federal Bureau of Investigation (FBI) since April of 2021. I am currently assigned to the Boston Division, Springfield Resident Agency. While employed by the FBI, I have investigated federal violations, including money laundering, wire fraud, bank fraud schemes, and child exploitation. Before becoming a Special Agent, I was an Intelligence Analyst embedded on FBI New Haven's Joint Terrorism Task Force ("JTTF"). I have received specialized training in investigating financial frauds and money laundering. As a federal agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

2.  I submit this affidavit in support of a criminal complaint charging Urvishkumar Vipulkumar PATEL (born 2002) with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349.

3.  The statements in this affidavit are based upon my investigation as well as information provided by other law enforcement officers. Since I submit this affidavit for the limited purpose of establishing probable cause to believe that PATEL has committed the above offense, I have not included every fact known to me concerning this investigation but, instead, have set forth only those facts that I believe are needed to establish the requisite probable cause.

## STATEMENT OF PROBABLE CAUSE

4.  Victim 1 is a 75-year-old man living in Berkshire County, Massachusetts.

5. In or around June 2024, Victim 1 received a pop-up message on his computer claiming that his computer was frozen. The message contained a phone number, which Victim 1 believed to be associated with Microsoft, for Victim 1 to call for assistance.

6. Victim 1 called the number listed on the pop-up and spoke with an individual who claimed to be trying to fix the problem. That individual then told Victim 1 that he could not fix the problem and had to transfer him to someone else.

7. Victim 1 was transferred to an individual who called himself Sam WILSON. WILSON told Victim 1 that he was a federal agent with the U.S. Treasury Department. WILSON told Victim 1 that he would take a look at the issue with Victim 1's computer. WILSON then purported to confirm Victim 1's name and address; when Victim 1 stated that was not the correct address, WILSON provided additional addresses until Victim 1 identified his correct address.

8. WILSON then told Victim 1 that based on Victim 1's confirming his name and address, WILSON could see that Victim 1's name and address was listed as being involved in a money laundering scheme. WILSON told Victim 1 that the "Treasury" showed that a number of houses had been purchased in Victim 1's name in both the United States and Russia.

9. WILSON told Victim 1 that he was going to help him get out of this trouble. He told Victim 1 that he would be talking to a judge, but that in the meantime, Victim 1 needed to safeguard his money from being further implicated in the supposed money laundering scheme. Specifically, WILSON told Victim 1 that he should withdraw cash from his bank and send it to the Treasury Department to be kept in a lock box until Victim 1 could be cleared of the scheme. WILSON cautioned Victim 1 that his bank would not let Victim 1 withdraw all of his money at once, so he should withdraw smaller amounts and send it to WILSON at Treasury in installments.

10. Victim 1 then began to withdraw the contents of his bank accounts and send the money to WILSON as directed. Specifically, from in or around June 2024 through in or around September 2024, Victim 1 provided money to several individuals he believed to be associated with WILSON on approximately five separate occasions.

11. On each occasion, the procedure was as follows:

    a. WILSON asked Victim 1 how much Victim 1 could withdraw from his bank account and Victim 1 told WILSON how much he could get at that time;

    b. WILSON told Victim 1 a specific date and time at which WILSON would send a courier for the cash;

    c. Victim 1 withdrew the cash from his bank account;

    d. WILSON directed Victim 1 to wrap the funds a certain way. Specifically, Victim 1 was directed to place the cash in a box, tape the box, and to write his (Victim 1's) name and address on the box;

    e. WILSON directed Victim 1 to meet the courier outside and gave him a "PIN" or passcode that the courier would provide to him to confirm he was the correct person. Victim 1 would describe his clothing to WILSON so WILSON could pass it on to the courier;

    f. The courier would pull alongside the curb in front of Victim 1's house and lower one of the passenger side windows so that the courier could speak to Victim 1;

    g. The courier then provided the prearranged passcode to Victim 1 and Victim 1 would place the box containing the cash into the courier's vehicle who would then drive away.

12. Over the course of approximately three months, Victim 1 withdrew and sent to WILSON via couriers approximately $420,000.

13. On October 1, 2024, Victim 1's sister reported this activity to the FBI.

14. Agents spoke with Victim 1 and arranged to have him reach out to WILSON via phone to arrange an additional pick up.

15. WILSON told Victim 1 that he would send a courier to collect an additional $33,000 in cash on October 7, 2024.

16. On October 7, 2024, agents traveled to Victim 1's residence at approximately 12:30 PM.

17. When agents arrived at Victim 1's residence, the courier was waiting at the curb outside of the home.

18. An undercover agent approached the courier from approximately a half block away, holding a box with Victim 1's name written on it, made to appear like boxes Victim 1 previously provided to WILSON's couriers. The box contained counterfeit cash.

19. The courier, later identified as PATEL, lowered the passenger side window and provided the PIN code to the undercover agent. The agent asked PATEL if he was looking for "Victim 1." PATEL answered that he was. The undercover, posing as Victim 1, asked PATEL if this payment would finally clear Victim 1, and PATEL answered yes.

20. The undercover agent then placed the box into PATEL's vehicle and PATEL quickly drove away.

21. Agents conducted a traffic stop of PATEL. PATEL was driving a rental car, which in my training and experience is a common tactic used by individuals who are trying to avoid detection. He had an active WhatsApp call on his cell phone at the time he was pulled over.

22. After providing him his *Miranda* warnings, PATEL initially told agents that he was being blackmailed to collect the packages. He later said he had been collecting packages for weeks at the direction of another. He stated that he was paid for collecting the packages. Specifically, he told agents that he would be given an address and a description of an individual who was to bring out a package. He also was given a PIN passcode to provide to the individual. He was given a meet location to drive to after obtaining the package. At the meet location, PATEL either provided the package to a person who paid him his cut or he left the package in a drop box and drove to another address to receive his payment.

23. PATEL told agents that he opened the first package he received and saw that it contained cash. He stated that he believed his activity was not lawful but continued to collect packages.

## CONCLUSION

24. Based on the information described above, there is probable cause to believe that PATEL conspired with WILSON and others unknown to commit wire fraud, in violation of 18 U.S.C. § 1349.

I declare that the foregoing is true and correct.

Signed electronically with authorization from
FBI Special Agent Christopher Barbadoro on October 7, 2024.

/s/ Christopher Barbadoro
_____
Special Agent Christopher Barbadoro
Federal Bureau of Investigation

Sworn before me by telephone in accordance with Federal Rules of Criminal Procedure 41(d)(3) and 4.1 this 7th day of October, 2024.

/s/ Katherine A. Robertson
_____
HONORABLE KATHERINE A. ROBERTSON
United States Magistrate Judge

Signed electronically with authorization from
Katherine A. Robertson, U.S. Magistrate Judge on October 7, 2024.

Certified to be a true and correct copy of the original
Robert M. Farrell, Clerk
U.S. District Court
District of Massachusetts

By: _____
Deputy Clerk
Date: 10/7/2024

5